UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 7 |
| LaJeff Lee-Percy Woodberry, | Case No. 18-46856 |
| Debtor. _____/ | Hon. Phillip J. Shefferly |
| Mark H. Shapiro, Chapter 7 Trustee for the bankruptcy estate of LaJeff Lee-Percy Woodberry, | Adversary Proceeding No. 18-4356-PJS |
| Plaintiff, | |
| v. | |
| Yumi Yoo Woodberry, | |
| Defendant. _____/ | |

### OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

This matter is before the Court on a request by a Chapter 7 Trustee ("Trustee") for a temporary restraining order and preliminary injunction. For the reasons explained, the Trustee's request is granted in part.

Background

On May 9, 2018, LaJeff Lee-Percy Woodberry ("Debtor") filed this Chapter 7 bankruptcy case. On August 2, 2018, the Trustee filed this adversary proceeding against the Debtor's wife, Yumi Yoo Woodberry ("Defendant"). Counts II, IV and V of the complaint seek to avoid an alleged fraudulent transfer and preserve the avoided transfer for the bankruptcy estate. Specifically, those counts allege that the Debtor fraudulently transferred the Debtor's home located at 18283 Muirland, Detroit, Michigan ("Muirland Property") to the Defendant for no consideration at a time when the Debtor was insolvent.

The prosecution of the adversary proceeding has been unusually long and arduous for several reasons. First, the Debtor, appearing pro se throughout his bankruptcy case, has unsuccessfully litigated various matters, including trying to convert his Chapter 7 case to Chapter 13 and appealing adverse rulings to both the United States District Court and the United States Court of Appeals. That has caused delay. Second, the Defendant, also appearing pro se, has unsuccessfully litigated tangential discovery and procedural matters. That has caused more delay. Third, because the Defendant speaks limited English, the Defendant has requested that the Debtor be permitted to translate for the Defendant at the hearings in this adversary proceeding. While the Court accepts that the Debtor's desire to translate and speak for his wife is well-intentioned, the Debtor's lack of bankruptcy knowledge and

- 2 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 2 of 11

understanding of the real issues when addressing the Court for the Defendant has caused still more delay and, even worse, has made the dealings with the Trustee acrimonious. Fourth, because the Debtor and the Defendant live in the Muirland Property with their children, the Court has tried to assist the parties in reaching a settlement that does not result in the Debtor and the Defendant losing their home. The Court even took the extraordinary step of sending the case to mediation twice — with two different mediators — with no success. Fifth, the Court has been liberal in granting the Defendant's requests for adjournments because of a personal tragedy that the Defendant experienced during this adversary proceeding. Sixth, the Court has had to extend the entire schedule in this adversary proceeding because of the Covid-19 public health crisis.

On July 8, 2020, the Court held a hearing on two motions, one of which was the Trustee's motion for summary judgment ("Summary Judgment Motion"). The Court took the two motions under advisement and indicated to the parties that the Court would take a couple of weeks to decide them.

During the hearing, the Debtor revealed that he and the Defendant mortgaged the Muirland Property on November 4, 2019 for $192,500.00 ("Proceeds"). This came as a surprise to the Trustee because the Trustee had recorded on June 18, 2018 a notice of Trustee's Claim of Interest Against Property with the Wayne County Register of Deeds under Mich. Comp. Law § 600.2705. Following the hearing, fearing that the

Debtor and the Defendant may dispose of the Proceeds and thereby prevent the Trustee from realizing the value of the Muirland Property if the Court grants the Summary Judgment Motion, the Trustee took action.

On July 10, 2020, the Trustee filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") (ECF No. 134). The Motion requests that the Court grant a temporary restraining order and a preliminary injunction prohibiting the Defendant from disposing of the Proceeds and requiring the Defendant to pay the Proceeds to the Trustee to hold until the Court adjudicates whether the Debtor's transfer of the Muirland Property is avoided and preserved for the estate. On July 14, 2020, the Defendant and the Debtor filed a joint response ("Response") (ECF No. 138) to the Motion. On July 15, 2020, the Court held the hearing on the Motion.

<u>Standard for preliminary injunction under Rule 65</u>

Federal Rule of Civil Procedure Rule 65 authorizes a federal court to issue a temporary restraining order and a preliminary injunction. Rule 65 is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7065. Rule 65(a)(1) authorizes a preliminary injunction only on notice to the adverse party. In contrast, Rule 65(b)(1) authorizes a temporary restraining order without notice to the adverse party. Because the Trustee provided notice of the Motion to the Defendant, and the Court held a hearing on the Motion with all parties present, the Court construes

- 4 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 4 of 11

the Motion solely as a request for a preliminary injunction and not a temporary restraining order, notwithstanding what the Motion says.

The Sixth Circuit Court of Appeals has described the factors to be considered for a preliminary injunction as follows:

> When determining whether to grant a preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest.

Tucker v. City of Fairfield, Ohio, 398 F.3d 457, 461 (6th Cir. 2005) (internal quotation marks and citation omitted). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." Hall v. Edgewood Partners Ins. Ctr., Inc., 878 F.3d 524,527 (6th Cir. 2017).

To meet the first factor, "a plaintiff must demonstrate, among other things, a strong or substantial likelihood or probability of success on the merits." United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 35 (6th Cir. 1992) (citation omitted).

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002) (citation omitted). "In addition, the party seeking injunctive relief generally must show that there is no other adequate remedy at law." United States v. Miami Univ., 294 F.3d 797, 816 (6th Cir. 2002) (citation omitted).

- 5 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 5 of 11

The Supreme Court has explained the purpose of a preliminary injunction as follows:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir. 1997) (quoting Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981)).

## Discussion

On August 21, 2019, the Court issued in the Debtor's bankruptcy case an Opinion Denying Debtor's Motion to Convert Case to Chapter 13 ("Opinion"). In re Woodberry, 604 B.R. 336 (Bankr. E.D. Mich. 2019). The Court's ruling in the Opinion was affirmed on appeal by the United States District Court for the Eastern District of Michigan on March 30, 2020. In re Woodberry, Case No. 19-CV-12576, 2020 WL 1508604 (E.D. Mich. March 30, 2020). The Opinion lists numerous undisputed facts taken from the Debtor's testimony at the § 341 meeting in his bankruptcy case. As explained in the Opinion, the Debtor testified that a money judgment was entered against him in favor of Ramco-Gershenson Properties, L.P. in the 35th District Court for the State of Michigan on June 17, 2017, followed by an award of attorney fees against the Debtor on February 15, 2018. In re Woodberry, 604 B.R. at 338. The

- 6 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 6 of 11

Debtor further testified that the day after the attorney fee award, the Debtor recorded a quit claim deed transferring the Muirland Property to the Defendant for $1.00. Id. The Debtor explained in his testimony that he did so because "I think my wife is very worried about the illegal tactics" of the judgment creditor and his attorney. Id. at 339. The Defendant does not dispute the reason why the Debtor recorded the quit claim deed, the date that the quit claim deed was recorded, nor that she did not give any consideration for the quit claim deed other than the recited consideration of $1.00.

The Court has not yet ruled on the Summary Judgment Motion, but the Debtor's own admissions in his § 341 testimony — all unrefuted by the Defendant — by themselves demonstrate a strong likelihood that the Trustee will prevail in seeking to avoid the transfer of the Muirland Property as a fraudulent transfer.

The Trustee argues that the bankruptcy estate will suffer irreparable harm absent a preliminary injunction because the Defendant may dispose of the Proceeds before the Court adjudicates this adversary proceeding. If that happens, the Trustee argues that the bankruptcy estate will be left without an adequate remedy at law if the Trustee prevails. This is because the Muirland Property is now encumbered by the mortgage and no longer has equity in it to compensate the bankruptcy estate for the true value of the Muirland Property at the time that the Debtor fraudulently transferred it to the Defendant. In the Response, the Defendant and the Debtor argue that any alleged harm is "pure speculation."

- 7 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 7 of 11

Here's the problem with the "speculation" argument in the Response. The Debtor has continuously insisted on speaking for the Defendant, and the Court has permitted the Debtor to do so based on the Defendant's language limitations. But the Court now has the firm impression, fostered by both the Debtor and the Defendant, and formed after countless hours of arguments made by the Debtor in his bankruptcy case and in this adversary proceeding, that it is the Debtor — and not the Defendant — who is making all the decisions regarding both the Defendant's defense of this adversary proceeding and the disposition of the Muirland Property and the Proceeds. As noted above and in much more detail in the Opinion, the Debtor has shown a willingness in the past to move assets out of the reach of creditors when he thinks they are getting close. That's not speculation, that's the Debtor's own admitted track record.

The Defendant and the Debtor have now taken the equity out of the Muirland Property after this adversary proceeding was filed. If the Trustee prevails in avoiding the transfer of the Muirland Property, the Trustee will not have an adequate remedy if the Proceeds are gone because there is no other identified source of recovery out of which the Defendant could satisfy a judgment. In these circumstances, the Court finds that the Trustee would suffer irreparable harm if the Defendant and the Debtor are not enjoined from disposing of the Proceeds.

Enjoining the Defendant and the Debtor from disposing of the Proceeds will not cause any harm to them, let alone substantial harm. In the Response, the only specific

- 8 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 8 of 11

harm that they identify if a preliminary injunction is entered is that they "will suffer loss of leverage and bargaining in negotiating." Loss of negotiating leverage that is derived from draining the equity from the asset that is the subject of litigation is not, at least in this Court's view, the type of cognizable harm that makes any difference in considering whether to issue injunctive relief. Moreover, Defendant and Debtor's retention of this purported leverage seems unnecessary given the stated intentions of the Debtor and the Defendant as to what they want to do with the Proceeds. On page eight of the Response, the Defendant and the Debtor state that the Proceeds have been "set aside to pay the creditor claims." When asked at the hearing what this meant, the Debtor explained that the Proceeds were being held in "safekeeping" for the purpose of funding a settlement of the adversary proceeding with the Trustee or otherwise paying the allowed claims in the Debtor's bankruptcy case. Taking the Debtor's statements at face value, the Court finds that a preliminary injunction prohibiting the Defendant and the Debtor from disposing of the Proceeds will not cause substantial harm to anyone.

The last factor for the Court to consider is the public interest. In a dispute over money to pay a debtor's creditors, the public interest is generally not a strong factor one way or the other. Neither the Motion nor the Response identify any particular impact that the presence or absence of injunctive relief in this case will have on the public interest. To the extent that public interest is relevant at all in this case, it militates

- 9 -

18-04356-pjs    Doc 140    Filed 07/16/20    Entered 07/17/20 08:43:02    Page 9 of 11

in favor of the Motion by not rewarding a defendant who, during a lawsuit against them, strips the equity out of the property that is the subject of the lawsuit.

## Conclusion

All the factors that the Sixth Circuit has said are relevant to a request for preliminary injunction support the Motion. Therefore, the Court finds that the Defendant and the Debtor, and all others acting in concert with them, must be enjoined from disposing of the Proceeds. That will preserve the status quo while the Court decides the Summary Judgment Motion and otherwise adjudicates this adversary proceeding.

However, as noted earlier, the Motion requests not only that the Defendant and the Debtor be enjoined from disposing of the Proceeds, but that they also be required to affirmatively turn over the Proceeds to the Trustee to hold. The Motion does not explain why it is necessary that the Trustee be the one to hold the Proceeds, if there is an order of the Court that enjoins the Defendant and the Debtor from disposing of the Proceeds. Stated another way, the Trustee offers no evidence that the bankruptcy estate will be harmed if the Defendant and the Debtor, rather than the Trustee, hold the Proceeds, subject to the Court's injunction. The salient point is not who holds the Proceeds, but rather, that the Proceeds be preserved, and not be disposed of until the adversary proceeding is adjudicated. Keeping in mind that the purpose of injunctive relief is to preserve the status quo pending the adjudication of a dispute, the Court finds

that it is not necessary to change the status quo by requiring that the Proceeds be turned over to the Trustee at this time. Accordingly,

**IT IS HEREBY ORDERED** that the Motion is granted to the extent set forth in this order.

**IT IS FURTHER ORDERED** that the Defendant and the Debtor, and all persons acting in concert with either of them, are hereby immediately prohibited and enjoined from disposing of all or any portion of the Proceeds for the pendency of this adversary proceeding or until further order of this Court. Within seven days from this order, the Defendant must provide the Trustee with: (1) a copy of the closing statement from the November 4, 2019 mortgage loan transaction that provided the Proceeds; and (2) a copy of a statement from the bank or other institution showing where the Proceeds are currently held.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction to enforce this order.

**Signed on July 16, 2020**



/s/ Phillip J. Shefferly
**Phillip J. Shefferly**
**United States Bankruptcy Judge**