UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 7 |
| LaJeff Lee-Percy Woodberry, | Case No. 18-46856 |
| Debtor. _____/ | Hon. Phillip J. Shefferly |
| Mark H. Shapiro, Chapter 7 Trustee for the bankruptcy estate of LaJeff Lee-Percy Woodberry, | Adversary Proceeding No. 18-4356-PJS |
| Plaintiff, | |
| v. | |
| Yumi Yoo Woodberry, | |
| Defendant. _____/ | |

**OPINION GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## Introduction

The chapter 7 trustee filed this adversary proceeding to avoid and recover for the estate various fraudulent transfers of property made by the debtor before he filed bankruptcy. The trustee has now moved for partial summary judgment with respect to one of those transfers — the transfer of the debtor's home to his wife. Because

there are no genuine issues of material fact in dispute, and the trustee is entitled to judgment as a matter of law, the Court will grant the trustee's motion.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(H), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Background

This adversary proceeding arises out of a pro se chapter 7 bankruptcy case filed on May 9, 2018 by LaJeff Lee-Percy Woodberry ("Debtor"). On August 2, 2018, Mark H. Shapiro, the chapter 7 trustee ("Trustee") in the Debtor's bankruptcy case, filed a 30-count complaint ("Complaint") against the Debtor's wife, Yumi Yoo Woodberry ("Defendant") to avoid and recover numerous fraudulent transfers alleged to have been made by the Debtor to the Defendant.

The adversary proceeding has taken an unusually long time to adjudicate. The Defendant is pro se and does not speak fluent English. Her husband, the Debtor, has appeared at all the hearings and acted as a translator for her, but too often has caused delay by conflating the issues in this adversary proceeding with unrelated issues in his bankruptcy case and in an adversary proceeding that the United States Trustee ("UST") has brought to object to his discharge. Also, because the largest transfer at issue in this adversary proceeding is the Defendant's home, the Court has encouraged mediation and has extended dates in this adversary proceeding for the

parties to mediate.  Finally, the Court has been liberal in granting adjournments because of personal issues of the Defendant and because of the COVID-19 public health crisis.

On May 29, 2020, after mediation was unsuccessful, the Trustee filed a motion for partial summary judgment ("Motion") (ECF No. 119).  The Motion pertains only to counts II, IV, and V of the Complaint.  Those counts allege that the Debtor owned real property located at 18283 Muirland Street, Detroit, Michigan ("Muirland Property"); the Debtor transferred the Muirland Property to the Defendant shortly before filing his bankruptcy petition; the Debtor did not receive any consideration for the transfer; and the Debtor was insolvent at the time that the Debtor made the transfer.  The Motion requests a judgment that the transfer of the Muirland Property by the Debtor to the Defendant was constructively fraudulent and voidable under § 548(a)(1)(B) of the Bankruptcy Code (count II) and Michigan Compiled Laws § 566.35(1)(a) (count IV), and requests that the Court preserve the avoided transfer of the Muirland Property for the benefit of the Debtor's bankruptcy estate under § 550 of the Bankruptcy Code (count V).  The Trustee supports the Motion with multiple exhibits and with excerpts from the Debtor's testimony at his § 341 meeting and his deposition.

On June 15, 2020, the Defendant filed a response (ECF No. 126) to the Motion and an affidavit (ECF No. 127) in support signed by the Debtor.  On July 7,

2020, the Defendant filed an additional brief (ECF No. 129) in support. All the Defendant's papers were filed pro se.

On July 8, 2020, the Court held a hearing on the Motion. Because the Defendant and the Debtor expressed a willingness to try again to settle this adversary proceeding, the Court ordered the parties to go back to mediation and indicated that it would defer ruling on the Motion while the parties mediated. Once again, mediation was unsuccessful, so the Court will now rule on the Motion.

## **Summary judgment standard**

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study

Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 447 U.S. at 256). "The nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" Cox v. Kentucky Dept. of Transportation, 53 F.3d 146, 149-50 (6th Cir. 1995) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir. 1989)).

"'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Brown v. City of Memphis, 921 F. Supp. 2d 865, 868 (W.D. Tenn. 2013) (quoting Anderson v. Liberty Lobby, 477 U.S. at 249-50). To be sufficiently probative, the evidence must "tend[ ] to support [the non-moving party's] version of the facts, *evidence* on which a reasonable jury could return a verdict for her." Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009) (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007)). "The 'mere possibility' of a factual dispute is not enough." Mitchell v. Toledo Hosp., 964 F.2d 577, 582

(6th Cir. 1992) (quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)).

Likewise, "[c]onclusory assertions, supported only by [the non-moving party]'s own opinions, cannot withstand a motion for summary judgment." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citation omitted). Nor can a non-moving party "withstand a motion for summary judgment by providing a 'bare legal conclusion' . . . ." Paris v. Walker (In re Walker), 531 B.R. 194, 202 (Bankr. E.D. Tenn. 2015 (quoting Emmons v. McLaughlin, 874 F.2d 351, 355 (6th Cir. 1989)).

## Discussion

### Count II

Count II of the Complaint is brought under § 548(a)(1)(B). That section provides that a trustee may avoid a transfer of an interest of the debtor in property that was made within two years before the date of filing a bankruptcy petition if the debtor (i) received less than a reasonably equivalent value in exchange for such transfer; and (ii) was insolvent on the date that such transfer was made.

The first element under this statute is that there must be a transfer of an interest of the Debtor in property. Attached to the Motion is a Sheriff's Deed on Mortgage Foreclosure ("Sheriff's Deed") dated May 3, 2012 and recorded on September 24, 2012, that conveys title to the Muirland Property to the Debtor. The Defendant does

not dispute the Sheriff's Deed.  The Sheriff's Deed establishes that the Debtor held an interest in the Muirland Property.  Also attached to the Motion is a Quit Claim Deed ("Quit Claim Deed") dated January 28, 2013 and recorded on February 16, 2018 that quit claims the Debtor's interest in the Muirland Property to the Defendant for $1.00.  The Defendant does not dispute the Quit Claim Deed.  The Quit Claim Deed satisfies the definition of a "transfer" in § 105(54)(D) of the Bankruptcy Code as a mode of parting with property or an interest in property.

The next element under the statute is that the transfer must be made within two years before the Debtor filed a bankruptcy petition.  The Defendant, assisted by the Debtor, argues that the transfer took place on the date the Quit Claim Deed was made, January 28, 2013.  The Trustee argues that the transfer took place on February 16, 2018, the date the Quit Claim Deed was recorded.  It makes a difference.  If the Defendant is correct, the transfer is more than two years before the Debtor filed his chapter 7 petition on May 19, 2018, but if the Trustee is correct, the transfer is within two years before the Debtor filed his chapter 7 petition.

The Trustee is correct because of § 548(d)(1).  Section 548(d)(1) specifies when a transfer is made for purposes of § 548:

> For purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee[.]

- 7 -

18-04356-pjs    Doc 165    Filed 09/09/20    Entered 09/10/20 10:19:54    Page 7 of 19

State law determines when a transfer is perfected against a bona fide purchaser. Selby v. Ford Motor Co., 405 F. Supp. 164, 170 (E.D. Mich. 1975) (citing Corn Exch. Nat'l Bank v. Klauder, 318 U.S. 434 (1943)). "For purposes of fraudulent transfer claims under § 548, the date the conveyance of the [p]roperty was recorded, thus perfected under [state] law, constitutes the date of the transfer." Slone v. Lassiter (In re Grove-Merritt), 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009) (citation omitted). The Muirland Property is in Michigan. Michigan law requires recording to perfect a transfer of real property against a bona fide purchaser. See Mich. Comp. Laws Ann. § 565.29 (an unrecorded transfer of real property is "void as against any subsequent purchaser in good faith and for a valuable consideration"); Hearn v. Bank of New York (In re Hearn), 337 B.R. 603, 610 (Bankr. E.D. Mich. 2006) ("In Michigan, a mortgage that is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration . . . whose conveyance is recorded before such mortgage.").

Until the Quit Claim Deed was recorded on February 16, 2018, it was not perfected under Michigan law and was therefore not superior to a bona fide purchaser of the Muirland Property from the Debtor. Under § 548(d)(1), the date of the transfer of the Muirland Property to the Defendant was February 16, 2018, the date the Quit Claim Deed was recorded and the transfer perfected under Michigan

- 8 -

18-04356-pjs    Doc 165    Filed 09/09/20    Entered 09/10/20 10:19:54    Page 8 of 19

law. Because the transfer of the Muirland Property was made on February 16, 2018, it was made within two years before the Debtor filed his chapter 7 petition.

The next element under the statute is that the Debtor must have received less than reasonably equivalent value in exchange for the transfer. The statute does not define "reasonably equivalent value," but § 548(d)(2)(A) does specify what value means for purposes of § 548:

> "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

The Trustee argues that the Defendant did not give the Debtor anything of value, let alone reasonably equivalent value, in exchange for the Quit Claim Deed. In support, the Trustee relies first on the Debtor's testimony at his § 341 meeting. When asked whether the Defendant gave him "anything" in exchange for the Quit Claim Deed, the Debtor responded with his own question: "I wouldn't say for the — what you mean? Like money or anything like that?" When the Trustee followed up by repeating "Anything," the Debtor testified unequivocally "No. Not in particular, no."

The Trustee next relies on his first request for admissions of fact (ECF No. 40) that he served on the Defendant on August 7, 2019. In request number 4, the Trustee asked that the Defendant "Admit that LaJeff Woodberry did not receive any consideration for transferring the Muirland Street property to you." In request

number 5, the Trustee asked that the Defendant admit that the value of the Muirland Property in February, 2018 "was at least $200,000.00." And in request number 6, the Trustee asked that the Defendant admit that there "were no mortgages or liens" on the Muirland Property in February, 2018. The Defendant did not respond to the Trustee's request for admissions of fact. Under Fed. R. Civ. P. 36(a)(3), as incorporated in this adversary proceeding by Fed. R. Bankr. P. 7036, the Defendant's failure to respond to a request for admission of a fact within 30 days means that the matter that is the subject of the request is deemed admitted. Here, that means that the Defendant has admitted that the Debtor received no value at all in exchange for the transfer of an interest in the Muirland Property which was worth at least $200,000.00 and had no mortgages or liens on it at the time of the transfer.

Nothing in any of the papers filed by the Defendant in opposition to the Motion makes any attempt to assert that the Defendant gave the Debtor anything in exchange for the Quit Claim Deed, let alone reasonably equivalent value. The only reference at all in the record of this adversary proceeding or the Debtor's entire bankruptcy case to any conceivable type of consideration for the Quit Claim Deed is a statement in the Debtor's brief that he filed with the United States District Court in support of his unsuccessful appeal of the denial of his motion to convert to chapter 13. In that brief, the Debtor stated that he gave the Defendant the Quit Claim Deed in exchange for his "wife's promise not to divorce the Debtor after the Debtor's

gambling addiction nearly destroyed their marriage." That unsworn statement does not refute the Debtor's sworn testimony at his § 341 meeting. Moreover, it has no legal significance because the law does not treat a promise of this type as having any value to a debtor's creditors. See Gold v. Marquette Univ. (In re Leonard), 454 B.R. 444, 458 (Bankr. E.D. Mich. 2011) (citing cases holding that "moral obligations," "love and affection," and "spiritual fulfillment" are not reasonably equivalent value).

The final element under § 548(a)(1)(B) is that the Debtor was insolvent on the date the transfer was made or became insolvent as a result of the transfer. When referring to an individual debtor, the term "insolvent" is defined in § 101(32)(A) of the Bankruptcy Code as meaning "financial condition such that the sum of [the debtor's] debts is greater than all of such [debtor's] property, at a fair valuation" exclusive of property fraudulently transferred, concealed, or removed, and exclusive of property that may be exempted.

To support his contention that the Debtor was insolvent when he transferred the Property to the Defendant on February 16, 2018, the Trustee relies first on the schedules of assets and liabilities that the Debtor filed with the Court after filing his chapter 7 petition. The Debtor's original schedules filed on May 23, 2018 listed total assets of $4,125.00 and total liabilities of $111,373.62. The Debtor did not list on his original schedule A/B any interest in the Muirland Property — presumably because he had transferred it to the Defendant by the Quit Claim Deed. However,

- 11 -

18-04356-pjs    Doc 165    Filed 09/09/20    Entered 09/10/20 10:19:54    Page 11 of 19

on June 27, 2018, he incongruously amended his schedule A/B to add the Muirland Property with a value of $265,000.00 but stated that his interest had a value of $0, and then claimed it as exempt on an amended schedule C. The Trustee objected to the exemption, arguing that the Debtor cannot claim an exemption in property that he does not own. The Court sustained the Trustee's objection. Putting aside the Debtor's attempt to list an interest in the Muirland Property, the amended schedule A/B did add some personal property that was not on the Debtor's original schedule A/B but listed the Debtor's total assets at only $7,145.42, still far below the Debtor's total liabilities of $111,373.62. As of the petition date, at least according to the Debtor's own sworn schedules, the Debtor's debts were greater than the value of his assets.

Recognizing that the date of the transfer of the Muirland Property was February 16, 2018, nearly three months before the Debtor filed his chapter 7 case on May 9, 2018, the Trustee relies on other evidence to show that the Debtor's debts were greater than his assets on the date of the transfer. First, the Trustee considered whether the Debtor may have had other assets on February 16, 2018 that he did not have when he filed his bankruptcy petition. The Trustee noted that the Debtor testified at his § 341 meeting that, in addition to his monthly disability benefits, he had received two substantial lump sum disability payments during 2017 and January, 2018. However, the Trustee pointed out that the Debtor also testified that he had

given all these payments to the Defendant before the end of January, 2018, and before he transferred the Muirland Property to the Defendant. Similarly, the Debtor testified at his § 341 meeting that he owned a membership interest in Family First L.L.C., which operated a hair salon, but he also testified that he took his name "off" of the ownership in January, 2018 because he "was being harassed" by a judgment creditor. Because the Debtor no longer had the two lump sum payments or the interest in the L.L.C. when he transferred the Muirland Property on February 16, 2018, those assets are not counted for purposes of determining whether the Debtor was insolvent on that date. The record does not show that the Debtor had any other assets on February 16, 2018.

The Trustee next turned to evidence on the liability side of the insolvency equation, examining the proofs of claims filed by creditors for the debts that the Debtor listed on his bankruptcy schedules to determine if they were already incurred and outstanding when the Debtor transferred the Muirland Property on February 16, 2018. The Trustee pointed to three proofs of claims. The largest proof of claim was filed by Dyck-O'Neal, Inc., for $74,052.66, based on a foreclosure judgment from 2013. Although both the Trustee and the Debtor had previously objected to this claim, neither of them disputed that this debt was incurred long before the date of the transfer of the Muirland Property. Ultimately, the Court allowed the claim over their objections in the amount of $71,013.72.

The Trustee next pointed to a proof of claim filed by Ramco-Gershenson Properties, L.P. for $23,733.30, based on two orders entered by a state court in Michigan, the first of which was entered in 2017 and the second of which was entered on February 15, 2018, one day before the transfer of the Muirland Property.[1] The Debtor also filed an objection to this claim, which the Court overruled, but even that objection did not dispute that this debt was already incurred before the date of the transfer of the Muirland Property.

The Trustee also pointed to a proof of claim filed by Discover Bank for $3,460.13 for a debt going back to 2006. The Trustee objected to the allowance of this claim as a partially secured claim but did not object to its allowance as an unsecured claim. Neither the Debtor nor the Defendant dispute that this debt was already incurred before the date of the transfer of the Muirland Property.

The proofs of claims filed by Dyck-O'Neal, Ramco-Gershenson Properties, L.P. and Discover Bank, all of which have been allowed by separate orders of the Court, total $98,207.15. All these debts were already incurred and were outstanding

---

[1] The Complaint alleges that the Debtor decided to make the transfer of the Muirland Property on February 16, 2018 directly as a result of the second order entered by the state court one day earlier to fraudulently transfer the Muirland Property out of the reach of this judgment creditor. The Complaint has two counts that seek to avoid the transfer and recover the Muirland Property because of actual fraud, but the Court need not reach those counts today or express any view about actual fraud because the Motion is based only on the counts in the Complaint that allege constructive fraud, not actual fraud.

at the time of the Debtor's transfer of the Muirland Property on February 16, 2018. These debts far exceeded the Debtor's total assets on that date of $7,145.42.

The Defendant does not support her response to the Motion with any evidence regarding insolvency. The Debtor's affidavit in support of the Defendant's response fails to address any of the Trustee's evidence, much less offer counter evidence. There is no genuine dispute that the sum of the Debtor's debts was greater than the fair value of the Debtor's assets on the date he transferred the Muirland Property. The Debtor was insolvent on that date within the meaning of § 101(32)(A).

Because there are no genuine issues of material fact in dispute with respect to any element of § 548(a)(1)(B), the Trustee is entitled to summary judgment on count II of the Complaint.

## Count IV

Count IV of the Complaint is brought under § 566.35(1) of the Michigan Uniform Voidable Transactions Act ("Michigan Act"), Mich. Comp. Laws §§ 566.31 to 566.45.[2] Like § 548(a)(1)(B) of the Bankruptcy Code, this section of the Michigan Act creates a cause of action based on constructive fraud, not actual fraud. Under this section, a transfer made by a debtor is voidable as to a creditor

---

[2] The Trustee is authorized by § 544(b)(1) of the Bankruptcy Code to avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable in the bankruptcy case. Here, the unsecured claims of the three creditors discussed earlier in this opinion fulfill this requirement and permit the Trustee to proceed under Mich. Comp. Laws § 566.35(1).

whose claim arose before the transfer was made if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and was insolvent at that time or became insolvent as a result of the transfer.

The elements that must be shown under this section of the Michigan Act are virtually identical to those under § 548(a)(1)(B). "Transfer" is defined in § 566.31(q) of the Michigan Act as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." The Quit Claim Deed meets this definition as a transfer by the Debtor.

The timing of the transfer of real property under the Michigan Act, like the Bankruptcy Code, depends on when the transfer "is so far perfected that a good-faith purchaser of the asset from the debtor against which applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." Mich. Comp. Laws § 566.36(1)(a). The same analysis that applies under the Bankruptcy Code applies under state law: the transfer is deemed to have taken place on the date the Quit Claim Deed was recorded, i.e., when the transfer was perfected.

Next, the Michigan Act defines "value" in § 566.33(1) as follows:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Value does not include an unperformed promise

> made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

The Trustee has established that the Defendant did not give the Debtor any value in exchange for the Quit Claim Deed, and the Defendant has not come forward with any evidence to refute that.

Last, under § 566.32 of the Michigan Act, a debtor is presumed insolvent in either of two ways — either the balance sheet test where, at a fair valuation, the debtor's debts exceed the assets, or the debtor "is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute[.]" Under either test, assets do not include property transferred with fraudulent intent and "[d]ebts do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset." The same evidence that establishes no genuine issue of material fact as to the Debtor's insolvency under the Bankruptcy Code establishes insolvency under the Michigan Act.

The most significant difference between § 566.35(1) of the Michigan Act and § 548(a)(1)(B) is that the transfer under the Michigan Act need not be made within two years before a bankruptcy petition but may be recovered as far back as six years. See Mich. Comp. Laws § 566.39 (adopting the six-year statute of limitations period from Mich. Comp. Laws § 600.5813 for actions brought under the Michigan Act's § 566.35(1)). That difference is irrelevant here because the Debtor's transfer of the

Muirland Property was made less than three months before the Debtor's bankruptcy petition, well within the look back period under either statute.

Because there are no genuine issues of material fact in dispute with respect to any element under the Michigan Act's § 566.35(1), the Trustee is entitled to summary judgment on count IV of the Complaint.

### Count V

Count V of the Complaint is brought under § 550.  Section 550(a) provides that, to the extent that a transfer is avoided under §§ 544 or 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property[.]"  Recovery may be from the initial transferee or any immediate or mediate transferee of the initial transferee.

The Trustee alleges, and the Defendant does not dispute, that the Defendant is the initial transferee of the Muirland Property.  Because there are no genuine issues of material fact in dispute with respect to any element under § 550(a), the Trustee is entitled to summary judgment on count V of the Complaint.

### **Conclusion**

The Trustee supports the Motion with citations to specific evidence in the record including the Debtor's testimony, schedules, documents, and admissions of fact.  In contrast, the Defendant does not cite to specific evidence in the record to counter the Trustee's evidence.  Instead, the Defendant's response and the Debtor's

- 18 -

18-04356-pjs    Doc 165    Filed 09/09/20    Entered 09/10/20 10:19:54    Page 18 of 19

supporting affidavit focus on the Debtor's generalized grievances about the unfairness of the bankruptcy process, the alleged failings of the Trustee, and the Debtor's and the Defendant's belief that this adversary proceeding is unnecessary and punitive. None of the Defendant's arguments create a genuine dispute of any material fact needed by the Trustee to prevail on the motion. For the reasons explained, the Court will grant the Motion. The Court will enter a separate order consistent with this opinion.

**Signed on September 9, 2020**



/s/ Phillip J. Shefferly
_____
Phillip J. Shefferly
United States Bankruptcy Judge